The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Hoag. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Gallagher Bassett Services, Inc. is the Third Party Administrator. Hatteras Yachts is self-insured.
4. Plaintiff was earning $326.00 per week at all relevant times and at the times of his alleged injury by accident.
5. The issue to be resolved is whether plaintiff sustained an injury by accident in the course and scope of his employment with defendant-employer Hatteras Yachts in July 1996.
6. The parties stipulated into evidence the following:
a. Medical records (10 pp.)
 b. A statement completed by plaintiff on 16 August 1996 in a Voluntary Termination Memorandum signed by plaintiff and dated 1 October 1997.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff is a forty-four year old male born on 21 July 1953. He is 6'1" in height and has weighed from 250 to 280 pounds.
2. Plaintiff did military service and attended some college. His jobs have mainly been laboring jobs where he has been required to be on his feet except for a time that he worked as a tractor-trailer operator.
3. Plaintiff has done predominantly carpentry and sheetrock work. He has worked in New Hampshire and California in sales and carpentry. He also worked in a ball-bearing factory in New Hampshire where his parents worked for over twenty years. Plaintiff began work for defendant-employer Hatteras Yachts on 30 October 1995. By January 1997, since he could not make sufficient income, he voluntarily left the employ of Hatteras.
4. Plaintiff has two minor children, ages twelve and thirteen, living with him.
5. Plaintiff has experienced a great deal of wear and tear on his legs and back. While performing sheetrock work, he walked on stilts.
6. Plaintiff hit his knee on a dashboard in a car accident in 1993. He has banged his right knee and also hurt his left knee.
7. At some time in May of 1996, plaintiff stepped on a hatch cover which gave way and caused him to drop about eighteen inches. Plaintiff alleged he fell forward, hit and scraped his right knee. Robert Eubanks, an employee, came down the corridor and saw plaintiff immediately after the alleged incident took place. He asked plaintiff if he would like to go see the nurse. However, plaintiff did not see the nurse, made no accident report and missed no time from work although he stated his knee throbbed for days. Mr. Eubanks indicated that plaintiff had shorts on and he did not see any visible injury.
8. Right after 4 July 1996, plaintiff hit his right knee while going up some raised steps at work. This time there was a small abrasion on his knee. Plaintiff did go to see the plant nurse who confirmed that she put a Band-Aid on plaintiff's abrasion. Joni Barrie, the nurse, was not advised of any other knee injury.
9. On 2 August 1996, plaintiff again reported to the nurse's station complaining of pain in his right knee. At this time he related to Ms. Barrie the alleged falling incident of May 1996 and reiterated the facts regarding the July incident. Plaintiff also related to Ms. Barrie the facts about another incident six weeks previous to the July incident, in which he allegedly cut his right knee. Plaintiff asked for and received a doctor's appointment on 2 August 1996.
10. On 16 August 1996, plaintiff returned to the nurse's station again complaining of right knee pain. At that time plaintiff requested to see a doctor and an appointment was made with Dr. Delaney. Plaintiff presented to Dr. Delaney on 23 August 1996. After examining plaintiff, Dr. Delaney concluded that there was nothing significantly wrong with him. X-rays taken on 23 August 1996 were unremarkable.
11. Plaintiff presented to Dr. Delaney on 5 September, 12 September and 26 September 1996. On 12 September 1996 Dr. Delaney's records indicate that there was no significant pathology "amenable to surgical treatment".
12. On 26 September 1996 Dr. Delaney released plaintiff with the admonishment that he should not climb too many stairs but with no restrictions. Plaintiff was to see Dr. Delaney on a follow-up basis as needed.
13. On 19 December 1996 plaintiff returned to the nurse's station complaining he had hit his right knee at home on his weight bench. He presented to the nurse's station again on 30 December 1996 complaining of right knee pain because he had bumped his knee at home while exiting his truck. Plaintiff had also used stilts since 1986 or 1987. During August 1996, while working on the side for a sheetrock subcontractor as well as for defendant-employer Hatteras plaintiff was practicing on stilts and almost fell. He denied hurting himself however, at trial on the witness stand.
14. On 6 January 1997 before leaving defendant-employer Hatteras, plaintiff asked for a return appointment to the doctor. Plaintiff presented on 7 January 1997 and saw Dr. Delaney's associate, Dr. Panchal. Dr. Panchal concluded that plaintiff had a chronic right knee pain of unexplained etiology. An examination demonstrated full of motion in the right knee with full flexion and no effusion in the knee joint. There was no tenderness and the stability of the knee was excellent. McMurray and Lochman tests were negative. An MRI which was analyzed by Dr. Panchal was unremarkable except for a small effusion. Dr. Panchal gave plaintiff a neoprene knee brace with a foam pad for his right knee. He advised plaintiff to use heat and ice at appropriate times to relieve symptoms.
15. Plaintiff voluntarily left his employment with defendant-employer; Hatteras Yachts on 10 January 1997 in order to make more money than his current wages plastering and finishing drywall at Ciesko Construction, where he commenced work immediately.
16. More recently, plaintiff has worked for Delphi Construction Company, on a job at the Onslow County Courthouse.
17. Plaintiff lost no time from work before or after he voluntarily left his job at defendant-employer's.
18. Plaintiff seeks further evaluation and treatment for his right knee.
19. Plaintiff, on his own, made an appointment with a Dr. Blair. An MRI was ordered by Dr. Blair and interpreted by Dr. Everett. The findings were negative.
20. Dr. Blair's medical records and comments at the deposition reveal that plaintiff has seen him for the past decade with a variety of personal injury problems and disability claims. Plaintiff had a motor vehicle accident in 1986. Dr. Blair treated plaintiff for back injuries when plaintiff was working for another employer in the late 1980's. In 1991 plaintiff filed a Social Security Disability Claim. In 1992 plaintiff sustained injuries in a slip and fall accident at Auto Zone. In 1993, plaintiff fell again while working for a different employer.
21. Plaintiff has complained of pain radiating into both legs, numbness in his leg and the sensation of his legs giving way since 1990 and 1991.
22. According to Dr. Blair, plaintiff's back condition occasionally causes his legs to give way.
23. In 1991 Dr. Blair referred plaintiff to Dr. Novak, a psychologist. According to Dr. Novak, plaintiff was hypochondriacal and subject to pain magnification.
24. Dr. Blair also attributed some of plaintiff's problems with his legs to degenerative changes from wear and tear and previous injuries, in addition to plaintiff's large size for his build and age.
25. Dr. Blair found only a small medial plica which popped before flexion in plaintiff's right knee. According to Dr. Blair however, such a condition can occur without trauma. Dr. Blair is of the opinion that arthroscopic surgery would have only a fifty percent chance of revealing any definitive diagnosis beyond that which has already been made. If there were anything actually wrong with the knee, there would only be a fifty percent chance that Dr. Blair could do anything of therapeutic value in subsequent surgery. According to Dr. Blair, there would be only a twenty-five percent chance that any arthroscopic surgery would effect a cure or give any relief to plaintiff.
26. According to Dr. Blair, he could not state with any degree of medical certainty, whether or not plaintiff' symptoms had been caused by any injury at Hatteras Yachts.
27. Plaintiff is a large man who has had many personal injuries and who has made both Workers' Compensation and Social Security Disability claims previously. He has a history of injuring himself at home while exercising, while driving, entering and exiting cars and he also has a habit of practicing and working while on stilts. In addition, plaintiff is a belligerent person and hypochondriacal.
28. Plaintiff's history is inconsistent. For example, he testified he was unable to take aspirin. However Ms. Barrie's records at defendant-employer's plant indicated plaintiff had reported he took an aspirin a day as a blood thinner. In addition, plaintiff told inconsistent stories about when he used stilts and whether or not he injured himself using them.
29. Finally, plaintiff never related to Dr. Delaney the fact that his knee popped.
30. For all of the above reasons and based on plaintiff's demeanor at the trial, the undersigned is of the opinion that plaintiff's assertion that he injured his knee while working at defendant-employer's is not credible.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury arising out of and in the course and scope of his employment with Hatteras Yachts. N.C. Gen. Stat. § 97-2.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim must be and hereby is DENIED.
2. Defendants shall pay the costs.
This the ___ day of August 1998.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ RENEE C. RIGGSBEE COMMISSIONER